# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3644

_____

United States of America,      *
     *
         Appellee,      *
     *    Appeal from the United States
      v.      *    District Court for the
     *    District of Minnesota.
David West Dixon,      *
     *
         Appellant.      *

_____

Submitted: June 15, 2011
Filed: August 15, 2011

_____

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted David West Dixon of aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a). The district court[2] sentenced him to 220 months' imprisonment. Dixon appeals, arguing that there was insufficient evidence to support his conviction, that the district court erred in failing to dismiss a potentially

_____

[1]The Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit, sitting by designation.

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

biased juror, that the district court procedurally erred in imposing his sentence, and that his sentence is substantively unreasonable. We affirm.

## I.

On January 12, 2010, a grand jury indicted Dixon and Ryan Liskow, alleging that they aided and abetted each other in robbing the Franklin Bank in Minneapolis. Liskow pleaded guilty and Dixon proceeded to trial.

Liskow testified for the prosecution. He stated that on the day before the robbery, December 27, 2009, he drove his van to his mother's house and took two guns to trade for drugs. Later, between midnight and 3:00 a.m., a third party introduced Liskow to Dixon. Liskow testified that he, Dixon, and three other individuals spent the night using crack cocaine in Liskow's van. Liskow said that the next morning, because they were out of drugs, money, and gas, he suggested to Dixon that they steal cash from a Starbucks coffee shop. Liskow testified that Dixon then suggested robbing a bank. Liskow explained that he and Dixon decided that Liskow would rob the bank, Dixon would act as the get-away driver, and they would split the proceeds evenly. Liskow stated that Dixon wrote a demand note while Liskow was inside a gas station, that Dixon gave him the note, and that he used the note in the robbery.

Officer Dean Roth and Lieutenant Michael Fossum testified to the following facts at trial. On the morning of December 28, 2009, Officer Roth observed Liskow run "frantically" down the street, and "jump" into a white van that Dixon was driving. Dixon immediately pulled away from the curb and ran a stop sign. Officer Roth pulled the vehicle over and learned via police radio communication that there was "an alert" on the vehicle, that the vehicle allegedly contained at least two guns, and that the nearby Franklin Bank had just been robbed. After a backup squad arrived, the officers handcuffed Liskow and Dixon. In the van, officers found $4097, the amount

stolen from the Franklin Bank. Officer Roth later searched Dixon and found a pen, a spiral notebook, and a bandana. The dimensions, lining, and single hole at the top of the notebook were consistent with the demand note used in the bank robbery. Officers questioned Dixon, and he denied any involvement in the robbery. Officers also questioned Liskow, who admitted robbing the bank, but denied writing the demand note.

A forensic document specialist, Karen Runyon, testified that indentations visible on some of the sheets of paper in the notebook found in Dixon's possession matched exactly the writing on the demand note. Based on an examination of approximately thirteen pages of writing samples from Dixon, Runyon testified that it was "highly probable," meaning "virtually certain," that Dixon wrote the demand note. She stated that based on three pages of writing samples from Liskow, it was probable that he did not write the demand note.

The jury returned a verdict of guilty. The district court calculated Dixon's advisory guideline range as 210 to 240 months' imprisonment, and sentenced him to 220 months.

## II.

## A.

Dixon first asserts that there was insufficient evidence to sustain his conviction. In reviewing the sufficiency of evidence to support a conviction, we consider the evidence in the light most favorable to the verdict, and will overturn a verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Wilder*, 597 F.3d 936, 943 (8th Cir.), *cert. denied*, 131 S. Ct. 169 (2010).

To convict Dixon, the government was required to prove that he knowingly and intentionally aided and abetted a bank robbery. *See United States v. Cady*, 495 F.2d 742, 744 (8th Cir. 1974). "To be guilty of a crime by reason of aiding and abetting, a defendant must have had a purposeful attitude, defined as affirmative participation which at least encourages the perpetrator." *United States v. Thomas*, 971 F.2d 147, 150 (8th Cir. 1992) (internal quotations omitted).

Dixon argues that because the government failed to prove that he wrote the demand note, he "was convicted on nothing more than Liskow's uncorroborated and self-interested testimony." Credibility determinations, however, are "within the province of the jury and virtually unreviewable on appeal." *United States v. McCraney*, 612 F.3d 1057, 1063 (8th Cir. 2010) (internal quotations omitted), *cert. denied*, 131 S. Ct. 1784. The jury heard that Liskow had pleaded guilty to the robbery and was testifying as a cooperating witness, with the hope of receiving a reduced sentence. Liskow gave detailed testimony of Dixon's participation in the crime, including that Dixon suggested and planned the robbery, wrote the demand note, and acted as the get-away driver. Liskow's testimony was not incredible or insubstantial on its face, and the testimony alone is sufficient to sustain Dixon's conviction. *See Cady*, 495 F.2d at 744.

The government, moreover, produced substantially more evidence than Liskow's report. Officer Roth testified that around the time of the robbery, he observed Dixon drive away after Liskow ran down the street and got into the vehicle, and that the vehicle contained the exact amount of money recently stolen from the nearby bank. The jury heard evidence that Dixon was in possession of a notebook that was consistent with the demand note paper and contained indentations that matched the note exactly. A forensic document specialist testified that it was "highly probable" that Dixon wrote the demand note. In light of this overwhelming evidence, the government provided more than sufficient evidence that Dixon affirmatively participated in the bank robbery.

## B.

During voir dire, a prospective juror stated that he was "a little biased" towards police officers because of family ties to law enforcement. Upon further questioning, the venireman stated that he was "fine" with making a decision based on what he would see and hear at trial. Dixon did not request that the court dismiss this prospective juror for cause. One party (the record does not disclose which) eventually used a peremptory strike to dismiss him. Because the venireman did not sit on the jury, neither Dixon's statutory right to exercise peremptory challenges, *see* Fed. R. Crim. P. 24(b), nor any constitutional right was violated. *See United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000); *United States v. Paul*, 217 F.3d 989, 1004 (8th Cir. 2000). Dixon's claim that the court committed reversible error by failing *sua sponte* to dismiss the prospective juror is therefore without merit.

## C.

Dixon challenges his sentence on both procedural and substantive grounds. In reviewing for procedural error, we review the district court's application of the guidelines *de novo* and its factual findings for clear error. *United States v. Paz*, 622 F.3d 890, 891 (8th Cir. 2010). We review the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007).

Dixon asserts that the district court committed procedural errors by failing to consider the factors set forth in 18 U.S.C. § 3553(a), and by not adequately explaining the basis for its sentence. "We do not require district courts to mechanically recite the § 3553(a) factors when it is clear the factors were properly considered." *United States v. Brown*, 627 F.3d 1068, 1073 (8th Cir. 2010) (internal quotations omitted). The district court discussed Dixon's lengthy criminal history, the need to protect society from his nearly continuous crimes, his high culpability for the crime at issue, his physical, mental, and emotional health issues, and his difficult childhood. The court

concluded that a sentence within the guideline range was appropriate for an offender with Dixon's background and offense conduct, but determined that a sentence at the top of the range was not warranted, because Dixon never caused serious physical harm to anyone. Thus, the sentencing transcript reflects that the district court considered the § 3553(a) factors and adequately explained the basis for Dixon's sentence.

Dixon next avers that the court erred by failing to explain its rationale for the disparity between his sentence of 220 months and Liskow's sentence of 46 months, and that this disparity is unreasonable. The record does not support Dixon's assertions. The court stated that not only had Liskow accepted responsibility and pled guilty, but that it found that Dixon was more culpable than Liskow in the robbery. Based on these legitimate distinctions, and the fact that Dixon has a much more extensive criminal history than Liskow, the disparity in sentences is not unwarranted or unreasonable. *See United States v. Davis-Bey*, 605 F.3d 479, 483 (8th Cir. 2010).

Dixon also contends that the court's failure to grant a downward departure pursuant to USSG § 5H1.3 was unreasonable. Section 5H1.3 provides that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." Dixon asserts that it is unclear whether the district court was aware that § 5H1.3 was amended shortly before the hearing, but absent any indication to the contrary, we presume the district court knew the law and considered the provision in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A); *United States v. Gray*, 533 F.3d 942, 943 (8th Cir. 2008).

After hearing Dixon's arguments and expressly recognizing Dixon's mental and emotional health issues, the court implicitly denied the motion when it found that the guideline range was appropriate for an offender with Dixon's background and offense conduct, and imposed a sentence within the advisory range. A district court's refusal

to grant a downward departure under the sentencing guidelines is unreviewable unless the court had an unconstitutional motive in denying the request or failed to recognize that it had the authority to depart downward. *United States v. Anderson*, 570 F.3d 1025, 1034 (8th Cir. 2009). Dixon makes neither assertion on appeal, so there was no procedural error.

Finally, we reject Dixon's claim that the district court imposed an unreasonably lengthy sentence. We presume that the sentence is reasonable, because it fell within the advisory guideline range, *see United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009), and we find nothing in the record to suggest that court abused its discretion.

*     *     *

The judgment of the district court is affirmed.

_____